<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| QUINTIN FELDER, | : | |
| | : | Civil Action No. 03-6100(SDW) |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| STATE OF NEW JERSEY, | : | **OPINION** |
| DEPARTMENT OF CORRECTIONS, | : | |
| NORTHERN STATE PRISON, and | : | |
| SERGEANT DAVIS, | : | |
| | : | December 18, 2006 |
| Defendants. | : | |

**WIGENTON,** District Judge.

This action is based on the events surrounding a prisoner extraction at Northern State Prison, Newark, New Jersey. Plaintiff is a former New Jersey prisoner who brings this action under 42 U.S.C. § 1983, the common law tort of assault and battery, and the common law tort of negligence. The claims are brought against Defendants State of New Jersey, State of New Jersey Department of Corrections, Northern State Prison, Correction Officers Lieutenant Sapp, Bruce Davis, Javier Munoz, Anthony Clark, Jorge Cintron, Jimmy West and C. Tyson (collectively, the "Correction Officers").

Before this Court is Defendants' Motion to Dismiss, or in the Alternative, for Summary Judgment. For the following reasons, the Court grants Defendants' Motion to Dismiss, or in the Alternative, for Summary Judgment.

1

**I.     Background**

Plaintiff is a former New Jersey prisoner, who was incarcerated at Northern State Prison in Newark, New Jersey, from February 26, 2001 through November 23, 2003. On December 22, 2001, Plaintiff was forcibly extracted from his cell by correction officers and taken to the Special Unit. The extraction was videotaped. The five correction officers who extracted Plaintiff are Munoz, Clark, Cintron, West and Tyson (collectively, the "Extraction Team"). Virtually all other material facts are in dispute.

Plaintiff alleges the following facts: On December 22, 2001, a prisoner began to burn incense near Plaintiff's cell. (Compl. 4). A correction officer extinguished the fire and accused Plaintiff of setting fires in his cell. Id. Shortly after the accusation, "a canister of mace was thrown by one or more of the defendant correction officers into the plaintiff's cell." Id. Following the mace, the Extraction Team entered the cell and extracted Plaintiff. Id. During the extraction, Plaintiff was thrown by the Extraction Team into a nearby locker which caused injuries to his face and mouth. Id. Plaintiff was "punched and kicked" by members of the Extraction Team both during the extraction and in transit to the Special Unit. (Opp'n Br. 6.) Also, while in transport from his cell to the Special Unit, the Extraction Team "unnecessarily drag[ged] [Plaintiff] down the stairs," which resulted in "severe pain to [his] neck, back and arms." (Plaintiff Aff'd 4.)

The Defendants offer a decidedly different version of the facts: Plaintiff had set a fire in his cell, which was quickly extinguished by corrections officers. (Br. in Support 3.) Plaintiff was ordered to exit his cell so that he could be moved to the Special Unit. Id. at 4. When he refused to comply with the order to exit his cell, Plaintiff began lighting fires in his cell. Id. The Extraction Team was ordered to enter the cell and remove Plaintiff. Id. Plaintiff "violently resisted efforts by

2

custody staff to remove him from his cell." Id. Plaintiff's legs were restrained, and he was carried down the stairs after refusing to walk. Id. Plaintiff then received medical treatment. Id.

Plaintiff alleges that the injuries sustained during the extraction have resulted in the following ailments: pain to his left wrist; numbness in the palm area of his left hand; intermittent back pain that is most frequent with rainy weather and is exacerbated when lifting or carrying heavy objects; intermittent headaches; and pain in his right eye which has now resolved itself. (Kemble Cert. Ex. A.)

On December 22, 2003, Plaintiff filed a Complaint. On March 28, 2005, Plaintiff filed an Amended Complaint. Fact discovery closed on November 30, 2005. On December 30, 2005, Defendants filed the instant Motion to Dismiss, or in the Alternative, for Summary Judgment.

**II.     Jurisdiction**

This Court has jurisdiction over the federal claims as against the Correction Officers in their individual capacities pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 1983 and supplemental jurisdiction over the state claims as against the Correction Officers in their individual capacities pursuant to 28 U.S.C. §1367.

**III.    Motion to Dismiss**

On a motion to dismiss pursuant to Federal Rule Civil Procedure 12(b)(6), the court is required to accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and to view them in the light most favorable to the non-moving party. Pinker v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002). The question is whether the claimant can prove any set of facts consistent with his or her allegations that will entitle him or her to relief, not whether that person will ultimately prevail. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).

While a court will accept well-plead allegations as true for the purposes of the motion, it will not accept unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegation. See Miree v. DeKalb County, Ga., 433 U.S. 25, 27 n. 2 (1977). Moreover, the claimant must set forth sufficient information to outline the elements of his claims or to permit inferences to be drawn that these elements exist. See Fed. R. Civ. P. 8(a)(2); Conley v. Gibson, 355 U.S. 41, 45-46 (1957). The Court may consider the allegations of the complaint, as well as documents attached to or specifically referenced in the complaint, and matters of public record. See Sentinel Trust Co. v. Universal Bonding Ins. Co., 316 F.3d 213, 216 (3d Cir. 2003); see also 5A Wright & Miller, Federal Practice & Procedure § 1357 at 299 (2d ed. 1990).

The Eleventh Amendment[1] grants states sovereign immunity in federal court from suits by private parties, including its own citizens, so long as the state has not waived this immunity. Quern v. Jordan, 440 U.S. 332 (1979) (§ 1983 was not intended to eliminate a State's Eleventh Amendment immunity); Meyer v. New Jersey, 460 F.2d 1252 (3d Cir. 1972). This immunity extends to agencies and departments of states. Pennshurst State School and Hosp. v. Halderman, 465 U.S. 89, 99 (1984). The Eleventh Amendment bar remains in effect when state officials are sued for monetary damages in their official capacities. Kentucky v. Graham, 473 U.S. 159, 169 (1985); Broselow v. Fisher, 319 F.3d 605, 607 (3d Cir. 2003).

As Defendant State of New Jersey has not waived its Eleventh Amendment immunity, this suit is barred against it. This suit is also barred against Defendant State of New Jersey Department of Corrections and Northern State Prison as they are agencies of the State of New Jersey. Finally,

---

[1] The Eleventh Amendment provides, "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. Amend. XI.

claims against the Correction Officers,[2] in their official capacities, are barred by the Eleventh Amendment.

Thus, the claims that survive the motion to dismiss are the § 1983, assault and battery, and negligence claims against the Correction Officers in their individual capacities.

## IV.    Motion for Summary Judgment

Summary judgment is appropriate where the moving party establishes that "there is no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A factual dispute between the parties will not defeat a motion for summary judgment unless it is both genuine and material. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant and it is material if, under the substantive law, it would affect the outcome of the suit. See id. at 248. The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the non-moving party to carry its burden of proof. See Celotex v. Catrett, 477 U.S. 317, 318 (1986).

Once the moving party has carried its burden under Rule 56, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). To survive a motion for summary judgment, a nonmovant must present more than a mere scintilla of evidence in his favor. Woloszyn v. County of Lawrence, 396 F.3d 314, 319 (3d Cir. 2005). The opposing party must set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations or denials of its

---

[2] As Lieutenant Marks was not named as a defendant in the Amended Complaint, there are no claims against Lieutenant Marks for this Court to rule on. Also, John Does 1-10 are not named as defendants in the Amended Complaint, and no claims remain against them.

pleadings. Shields v. Zuccarini, 254 F.3d 476, 481 (3d Cir. 2001). At the summary judgment stage the court's function is not to weigh the evidence and determine the truth of the matter, but rather to determine whether there is a genuine issue for trial. See Anderson, 477 U.S. at 249. In doing so, the court must construe the facts and inferences in the light most favorable to the non-moving party. Curley v. Klem, 298 F.3d 271, 276-77 (3d Cir. 2002).

Section 1983 of Title 42 of the United States Code subjects to liability:

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Colombia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws.

42 U.S.C. § 1983. To establish a viable § 1983 claim, a plaintiff must demonstrate that "the conduct complained of was committed by a person acting under color of state law" and that "this conduct deprived [the plaintiff] of rights, privileges, or immunities secured by the Constitution or laws of the United States." Kost v. Kozakiewicz, 1 F.3d 176, 184 (3d Cir. 1993) (quoting Parratt v. Taylor, 451 U.S. 527, 535 (1981), overruled in part on other grounds by Daniels v. Williams, 474 U.S. 327 (1986)).

To establish that a defendant acted under color of state law, a plaintiff must demonstrate that the defendant "exercised power 'possessed by virtue of state law and made possible only because the [defendant] is clothed with the authority of state law.'" Barna v. City of Perth Amboy, 42 F.3d 809, 815-16 (3d Cir. 1994) (quoting West v. Atkins, 487 U.S. 42, 48 (1988)). A defendant is "a state actor when (1) he is a state official, (2) "he has acted together with or has obtained significant aid from state officials," or (3) his conduct is, by its nature, chargeable to the state." Angelico v. Lehigh

Valley Hospital, Inc., 184 F.3d 268, 277 (3d Cir. 1999) (quoting Lugar v. Edmondson Oil Co., 457 U.S. 922, 937 (1982)).

To establish that a defendant violated a right secured by the Constitution or laws of the United States, a plaintiff must demonstrate that the defendant deprived it of such right as charged in the complaint.  Salerno v. O'Rourke, 555 F. Supp. 750, 757 (D.N.J. 1983).  A plaintiff must "identify the exact contours of the underlying right said to have been violated." Downey v. The Coalition Against Rape and Abuse, Inc., 143 F. Supp. 2d 423, 437 (D.N.J. 2001) (quoting County of Sacramento v. Lewis, 523 U.S. 833, 841 n. 5 (1998)).

> A defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of respondeat superior.  Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence.  Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity.

Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) (citations omitted).

Under the Eighth Amendment, "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."  To prove a cruel and unusual punishment claim (e.g., excessive force claim) under the Eighth Amendment, a prisoner must satisfy two requirements.  First, the prisoner must establish that the "prison officials acted with a culpable state of mind, that is 'whether [the] force was applied in a good faith effort to maintain and restore discipline or maliciously and sadistically for the very purpose of causing harm.'"  Concepcion v. Morton, 125 F. Supp. 2d 111, 122 (D.N.J. 2000) (overturned on other issues).  Second, the prisoner must establish that the prison official's actions, taken contextually, were "objectively harmful enough" to offend "contemporary standards of decency."  Hudson, 503 U.S. at 8 (internal quotations

omitted).  To determine whether the prisoner has established the second factor, courts examine the following five factors:

> (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them; and (5) any efforts made to temper the severity of a forceful response.

Brooks v. Kyler, 204 F.3d 102, 106 (3d Cir. 2000).

In this case, no reasonable fact finder could conclude, based on the evidence in the record, that the Correction Officers violated Plaintiff's Eighth Amendment right against excessive force. The only evidence in the record that supports Plaintiff's excessive force claim is Plaintiff's controverted testimony.  The Correction Officers contend that they did not use excessive force because they followed the Northern State Prison Policy and Procedure manual when extracting Plaintiff from his cell after he started a fire and then refused to exit.  The Court reviewed the videotape, which documented the entire extraction procedure including the instructions given prior to the Extraction Team entering Plaintiff's cell.[3]  The Correction Officers were professional and did not exert excessive force to extract Plaintiff from his cell and did not exert excessive force when transporting Plaintiff to the Special Unit.  The videotape showed Plaintiff standing over a fire in his cell.  It also showed Plaintiff covering, with what appeared to be a sheet, the window to his cell which prevented the Correction Officers from looking inside his cell.  The videotape further showed that prior to entering Plaintiff's cell, the Extraction Team received individual and collective

---

[3] For some unknown reason, approximately two minutes of the eight minutes prior to entry by the Extraction Team are not shown on the videotape.  During these two minutes, it appears that the Extraction Team is waiting for the mace to affect Plaintiff.

instruction. As far as individual instruction, each member of the Extraction Team was instructed to restrain a specified body part (e.g., one member was ordered to restrain the right leg). As far as collective instruction, the Extraction Team received an overview of the extraction procedure. The videotape included sound whereby the Court heard a Correction Officer order Plaintiff to stop resisting and cooperate with the Extraction Team's efforts to extract and transport him to the Special Unit. At one point, Plaintiff refused to walk down the stairs and the Extraction Team was forced to carry him. A nurse observed Plaintiff's injuries at the landing of the stairs, at which point Plaintiff began to cooperate and walk to the Special Unit. When the Extraction Team and Plaintiff arrived at the Special Unit, a nurse treated Plaintiff for injuries. The Court also heard Plaintiff make terroristic threats to the Correction Officers intermittently during extraction and transport to the Special Unit. The Correction Officers did not respond to Plaintiff's threats. Thus, no reasonable fact finder could find that the Correction Officers used excessive force to extract and transport Plaintiff to the Special Unit. Plaintiff's § 1983 claims against the Corrections Officers, in their individual capacities, are dismissed with prejudice.

The Court does not exercise supplemental jurisdiction over the assault and battery and negligence claims against the Correction Officers in their individual capacities. Thus, those claims are dismissed without prejudice.

**V.     Conclusion**

For the reasons above, Defendants' Motion to Dismiss, or in the alternative, Motion for Summary Judgment is GRANTED.

**S/Susan D. Wigenton, U.S.D.J.**

9